No. 46,421

State of Kansas, *Appellant,* v. Michael H. Boyle, *Appellee.*

(486 P. 2d 849)

Opinion filed July 12, 1971.

*Mark L. Bennett, Jr.,* Assistant County Attorney, argued the cause, and *Vern Miller,* Attorney General, and *James A. Wheeler,* County Attorney, were with him on the brief for the appellant.

*Harlan L. Long,* of Shawnee Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an interlocutory appeal by the state pursuant to K. S. A. 1970 Supp. 22-3603, wherein the trial court sus-

tained the defendant's motion to suppress certain physical evidence and a statement given to an agent of the Federal Bureau of Investigation.

The questions pertain to the propriety of the trial court's action in sustaining the defendant's motion.

On the 27th day of August, 1970, a telephone call was received by the Overland Park police department from an individual identifying himself as Pat Boyle. Pat had been placed in charge of the family home at 9710 West 91st Street Terrace in Overland Park, Kansas, while his parents were on vacation. Pat requested the Overland Park police department to go to his parents' home at the above address and remove three cases of dynamite which his younger brother had stored in the home. After verifying the authenticity of the call, Overland Park police officers were dispatched to the residence. Upon arrival, they were met by Mary Elizabeth Boyle, a younger sister of Pat Boyle, who resided in the residence. She was awaiting the police at the neighbors across the street from the residence. At that time she stated to the police her brother, Michael Boyle, had three cases of dynamite in the house and that she wanted the officers to enter the house and remove the dynamite.

In compliance with Mary's request, the officers approached the home and could see through the basement garage windows, where they were able to observe three cases of dynamite stacked in the garage. At that time a person named Michael H. Boyle (defendant-appellee), brother of Pat and Mary, came out of the garage door, at which time one of the Overland Park police officers placed him under arrest for the possession of dynamite, and directed him to proceed back through the garage and family room of the home to the front door where other officers were attempting to gain entry.

As the arresting officer and Michael Boyle proceeded through the house, the officer again observed the three cases of dynamite partially covered with a blanket in the basement garage of the home, and on passing through the family room, also observed what appeared to him to be marijuana.

When Michael Boyle and the arresting officer arrived at the front door, Charles Young, a companion of Michael, had opened the door and allowed the officers at the front of the house to enter. (Young denies that he voluntarily let the officers in the front door.) At that point Sergeant Gary Casida of the Overland Park police department, who had entered by way of the front door, asked Michael

Boyle if he had any dynamite in the house, and Michael answered in the negative. Sergeant Casida then asked Michael if he had any objection to them looking around the house and Michael replied that he did not have any objection. The officers then walked back through the house and observed the previously mentioned marijuana and also the three cases of dynamite in the basement garage, partially covered with a blanket. At that time the officers did not attempt to move the dynamite, but awaited an army demolition team called from Fort Riley, Kansas.

While awaiting the arrival of the demolition team, officers of the Overland Park police department proceeded to the Johnson County courthouse where they appeared before the judge of the magistrate court and made application for a search warrant for the premises in question. At 2:03 in the afternoon on the 27th day of August, 1970, a search warrant was issued. The search warrant discloses that the court found from the evidence heard there was probable cause to believe that an offense against the laws of the state had been committed, and it directed a search for dynamite and marijuana—described as contraband, or fruits, instrumentalities or evidence of such offense—located in or upon the premises. Upon execution of the warrant the police recovered from the residence three cases of dynamite, two disposable needles, one needle and syringe, one plastic bag and contents (marijuana), two hand-rolled cigarettes, and one hash pipe. This was the physical evidence the trial court suppressed upon the defendant's motion. Later that same day, but after the initial entry into the residence, a formal written consent to search the home was obtained by the Overland Park police officers from Mary Elizabeth Boyle.

Following the arrest of Michael Boyle he was transported to the Overland Park police department where he was advised of his rights under the *Miranda* decision at 1:50 p. m. At that time he declined to sign a rights waiver and the Overland Park police officers did not continue questioning him. Shortly thereafter, at 2:26 p. m. on the same day, agents of the Federal Bureau of Investigation arrived and commenced questioning Michael Boyle. At the outset of the inquiry they did not advise Michael of his rights pursuant to the *Miranda* decision, but rather waited until it became apparent that there was a possible federal violation involved, at which time they did advise Michael of his rights and he signed a waiver.

The following day, August 28, 1970, Michael Boyle was charged

by complaint in the magistrate court of Johnson County, Kansas, with criminal violations. The complaint was amended on September 14, 1970, charging him with advocating the overthrow of the government by violence (K. S. A. 1970 Supp. 21-3802); conspiracy to commit arson (K. S. A. 1970 Supp. 21-3302); burglary (K. S. A. 1970 Supp. 21-3715); theft of property of the value of less than $50 (K. S. A. 1970 Supp. 21-3701); possession of an explosive with intent to commit a crime (K. S. A. 1970 Supp. 21-3731); and possession of marijuana (K. S. A. 65-2502).

At the preliminary hearing on September 15, 1970, the defendant was bound over to the district court for trial on all of the above charges except the one charging him with advocating the overthrow of the government by violence, which the magistrate court dismissed.

On the 23rd day of September, 1970, the defendant was formally arraigned in the district court of Johnson County, Kansas, and entered a plea of not guilty to each of the five counts for which he had been bound over. After several continuances of the trial setting at the defendant's request, the defendant on March 5, 1971, filed a motion to suppress certain physical evidence as well as a statement made to an agent of the Federal Bureau of Investigation. It is from the order of the trial court sustaining the defendant's motion that the state has duly perfected an appeal to this court pursuant to 22-3603, *supra*.

Did the trial court err in sustaining the defendant's motion to suppress certain physical evidence?

At the hearing on the motion to suppress, Pat Boyle testified that although he did not live at the residence located at 9710 West 91st Street Terrace in Overland Park, Kansas, he had been left in charge of and responsible for that residence during the time that his parents were away on vacation. Further, Mary Elizabeth Boyle testified that she was 18 years of age, a sister of both Pat and Michael, and did in fact reside at the family home at the above address on the 27th day of August, 1970. On that date Mary observed her brother, Michael, in the basement garage of the home where he had in his possession three cases of dynamite. When Mary first called Pat at the City National Bank in Kansas City, Missouri, where he worked, concerning Michael's possession of the dynamite, she informed Pat that Michael was *talking crazy*. She said she was frightened and Pat directed her to go across the street to the neighbors and await

the arrival of the police. Captain John Patton, in charge of the detective division of the Overland Park police department, testified that he received the call from Pat Boyle on the 27th day of August, 1970, who at that time "advised him (Patton) that Boyle's younger sister, Mary Elizabeth, had called him at work and stated that she was frightened inasmuch as her other brother, Michael H. Boyle, had some dynamite in the basement of the house and was talking crazy."

Both Pat Boyle and Mary further testified they had called or personally talked to officers of the Overland Park police department and both had specifically requested that these officers go to the residence at 9710 West 91st Street Terrace in Overland Park, Kansas, and remove the three cases of dynamite in question from the home.

It has long been a well settled rule of law in both the federal and state courts that the constitutional immunity from unreasonable searches and seizures may be waived by a consent to a search or seizure. In *Zap v. United States,* 328 U. S. 624, 90 L. Ed. 1477, 66 S. Ct. 1277, the rule is stated:

". . . the law of searches and seizures as revealed in the decisions of this Court is the product of the interplay of the Fourth and Fifth Amendments. *But those rights may be waived. . . .*" (p. 628.) (Emphasis added.)

Kansas decisions holding to the same effect are *State v. Miles,* 206 Kan. 748, 751, 481 P. 2d 1020; and *State v. Zimmer,* 198 Kan. 479, 500, 426 P. 2d 267, cert. denied 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298.)

Once it is recognized that the constitutional right of individuals to be secure against unreasonable searches and seizures may be waived, the question arises as to whether a joint occupant of certain premises can give consent to search such jointly occupied premises and bind the other joint occupant by such consent.

This court has recently held, where two or more persons jointly occupy living quarters, the consent of one of them is sufficient to form the basis for a valid search. (*State v. McCarty,* 199 Kan. 116, 427 P. 2d 616, cert. denied as to McCarty 392 U. S. 309, 20 L. Ed. 2d 1115, 88 S. Ct. 2065; and *State v. Boyd,* 206 Kan. 597, 600, 481 P. 2d 1015; and cases cited in these decisions.)

Here the police officers, on the uncontradicted evidence presented by the record, had authority to enter and search the home in question for dynamite by reason of the voluntary consent given them by both Pat Boyle and Mary Elizabeth Boyle. Each was

in a position of authority to give such consent. Furthermore, after the initial lawful entry into the home, Michael Boyle gave the police officers consent to search the house.

The appellee contends that the police officers' knowledge of the circumstances was limited to their conversation with Pat and Mary; that there was no report or any information regarding stolen goods, burglaries or theft; that the police had no knowledge of the appellee from their own sources and did not even bother to obtain a description of him; and the fact that they arrested the appellee at the particular time and place in question rather than someone else was only coincidental. The appellee argues the record does not contain any information reflecting that he obtained the dynamite illegally nor that its presence or possession was in any sense illegal or wrong or in any way improper.

The appellee concludes the search and seizure was unlawful because the officers did not have a warrant for an arrest or for search and seizure which they had sufficient time to get, if probable cause existed.

It must be conceded that an arrest with or without a warrant must be founded upon more than mere suspicion. The language of the Fourth Amendment to the United States Constitution, that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the persons or things to be seized applies to arrest as well as search warrants. (*Giordenello v. United States*, 357 U. S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245.)

The quantum of information which constitutes probable cause—evidence which would warrant a man of reasonable caution in the belief that a felony has been committed—must be measured by the facts of the particular case. (*Carroll v. United States*, 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A. L. R. 790.)

But as we view the facts here, the police officers' authority to enter the residence in question and search for the dynamite was not dependent upon an arrest of the appellee.

Here there was no seizure of contraband or evidence of crime until after a valid search warrant was issued. Only unreasonable searches and seizures are prohibited by the Fourth Amendment. The search made here with valid consent was not unreasonable. It has been said the test of reasonableness cannot be stated in rigid or absolute terms, and that each case is to be decided on its own

facts and circumstances. (*State v. Crouch,* 192 Kan. 602, 604, 389 P. 2d 824.)

Here the need to protect life or avoid serious injury is justification for what might otherwise have been illegal absent an exigency or emergency. On the uncontradicted facts in this case the police were confronted with exigent circumstances. An 18 year old girl had called her older brother, who was at work in Kansas City, Missouri, and advised him that she was frightened due to the fact that her brother, Michael, was at the family home, had three cases of dynamite in his possession, and was "talking crazy." The residence which allegedly contained the dynamite was located in a residential area, surrounded by other homes, and within approximately one block of an elementary school. With this information the Overland Park officers immediately responded to the call for assistance by going to the residence in question, and their entry into the residence, as well as their subsequent observations were justified by the exigency of the situation.

Where "exigent circumstances," referred to in *Miller v. United States,* 357 U. S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190, exist the business of policemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with judicial process. We cannot subscribe to the concept of criminal justice, asserted by the appellee, in which form governs substance. Form is of genuine importance in the law, for the law is form in a sense, but there are limits. We reject the idea that society can be frustrated and denied reasonable protection by mechanical adherence to formalism. Here the police were not required to lay siege to the residence to await a search warrant while lives may have been at stake. (*Wayne v. United States,* 318 F. 2d 205 [D. C. Cir. 1963].)

On the facts here presented the dynamite was contraband only if it was possessed by the appellee with the intent to use it to commit a crime. (K. S. A. 1970 Supp. 21-3731.) The uncontradicted evidence was that the appellee had three cases of dynamite at the family home in his possession and was "talking crazy" according to Mary Elizabeth Boyle, his younger sister. This was sufficient for the police to act under the circumstances.

The police officers were lawfully on the premises here in question in response to a citizen's call for help, and while lawfully on

the premises observed contraband or evidence of crime in the form of both dynamite and marijuana in open view.

It has long been settled that objects falling in plain view of an officer who has a right to be in the position to have that view, are subject to seizure and may be introduced into evidence. (*Harris v. United States,* 390 U. S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992.) Numerous cases have held that looking through a window does not constitute an unreasonable search. (*People v. Willard,* 238 C. A. 2d 292, 47 Cal. Rptr. 734, and cases cited therein.)

In *State v. Blood,* 190 Kan. 812, 378 P. 2d 548, this court said:

". . . It has been held that the eye cannot commit a trespass condemned by the Fourth Amendment. (See, *McDonald v. United States* [1948], 335 U. S. 451, 93 L. Ed. 153, 69 S. Ct. 191.) Observation of that which is in plain view is not a search. (*State v. Campbell* [Mo. 1953], 262 S. W. 2d 5; *State v. Hawkins,* [1951], 362 Mo. 152, 240 S. W. 2d 688; and *State v. Harre* [Mo. 1955], 280 S. W. 2d 41.)

"In *Ellison v. United States* [1953], 206 F. 2d 476, the United States Court of Appeals for the District of Columbia Circuit, said:

" '. . . Nor were they guilty of any impropriety in allowing their eyes to wander while they were waiting on the porch. The bottles and cigarettes were not covered or hidden, though it may have been necessary to bend over the porch rail to see them. There was no intrusion into appellant's privacy. Nor did mere observation constitute a "search." If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him.' (p. 478.)

. . . . . . . . . . . . . .

"An officer lawfully on the premises or in a public place can always seize property which is open to his view, if he has reasonable cause to believe it is being kept or used in violation of the law. (*Ellison v. United States,* supra.) There is no contention that the troopers were not officers or that they were not in a public place or lawfully on the premises where the search was made." (pp. 819, 820.)

The testimony established that a valid search warrant was obtained after the officers had been dispatched to the residence in call for help, and after they had viewed certain items of contraband which were in open view while they were lawfully on the premises. Once an officer has observed such contraband in open view, while being lawfully at a particular location, these observations may be used to establish probable cause for the issuance of a search warrant. (*State v. Yates,* 202 Kan. 406, 449 P. 2d 575.)

An agent of the Federal Bureau of Investigation, Thomas Den-

Ouden, testified that he had occasion to investigate the possession of three cases of dynamite possessed by Michael Boyle on August 27, 1970, by reason of information received from the Overland Park police department. He and another agent had a conversation with Michael and did not advise him of his rights until it became apparent, after approximately ten minutes, that there might be a federal violation involved. Michael was then advised of his rights pursuant to *Miranda*. Michael indicated he understood them and signed a waiver of rights form, whereupon he gave a statement to the officers in which he made certain admissions and confessions regarding the dynamite and its intended use. The only admission made prior to having been advised of his rights pertained to the intended use of the dynamite.

Michael had previously been advised of his rights under *Miranda* by the Overland Park police officers; but he refused to sign a waiver of rights form, and the Overland Park police officers did not question him.

The rule has emerged following the decision in *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974, that once the mandate of *Miranda* is complied with at the threshold of the interrogation by law enforcement officers, the warnings need not be repeated at the beginning of each successive interview. To adopt an automatic second warning system would be to add a perfunctory ritual to police procedures rather than provide the meaningful set of procedural safeguards envisioned by *Miranda*. (*Gorman v. United States*, 380 F. 2d 158, 164 [1st Cir. 1967]; *People v. Hill*, 39 Ill. 2d 125, 233 N. E. 2d 367; *Miller v. United States*, 396 F. 2d 492 [8th Cir. 1968]; and *United States v. Osterburg*, 423 F. 2d 704 [9th Cir. 1970].)

The refusal of the appellee to *sign* a rights waiver form for the Overland Park police officers is not tantamount to an assertion that he did not desire to be questioned on the matter. His voluntary response to inquiry by the F. B. I. agents after the initial warning was an effective waiver. The circumstances under which the appellee made his statement to the F. B. I. agents does not even suggest that the appellee invoked his privilege, or that his statement was the product of compulsion.

For the reasons heretofore stated we find the trial court erroneously suppressed the physical evidence and the statement given to an agent of the Federal Bureau of Investigation.

The state has sustained its burden of proving the challenged evidence to be admissible. The judgment of the lower court is reversed and the case remanded for further proceedings consistent with the views expressed in this opinion.