(573 P.2d 1134)

No. 49,370

STATE OF KANSAS, *Appellant,* v. MARGARET JONES, *Appellee.*

Opinion filed January 27, 1978.

*Daniel F. Meara,* county attorney, and *Curt T. Schneider,* attorney general, for the appellant.

*Larry A. Prauser* of Armstrong & Prauser, of Columbus, for the appellee.

Before FOTH, P.J., ABBOTT and SPENCER, JJ.

SPENCER, J.: On interlocutory appeal by the State pursuant to K.S.A. 1976 Supp. 22-3603, the question presented is whether the trial court erred in sustaining defendant's motion to suppress evidence.

On Sunday, March 6, 1977, at 3:39 a.m., a fire was reported to the Fort Scott Police Department by a resident of an apartment house located in that city. Sergeant Norwood Hall and two other police officers responded by going immediately to the apartment. Upon arrival, Sergeant Hall went to a window and saw what appeared to be a cloud of smoke inside the apartment. He then pushed the door of the apartment open, entered the living room, and proceeded through a hallway where he found a rubber-backed rug smoldering on top of a floor furnace. He took the rug back through the front door, threw it into the yard, and re-entered the apartment to look for occupants and to clear the apartment of smoke. At this stage, the two officers who had followed Sergeant Hall into the apartment had determined that there were no occupants. As they began to open windows in order to clear the smoke, one of the officers pointed to a small wooden box on a coffee table in front of the divan in the living room. The box was open and contained what the officers believed to be "roaches," or the remains of partially smoked marijuana cigarettes. The box also contained a pipe and some plastic bottles containing what were

believed to be marijuana seeds. Additional "roaches" were visible in ashtrays on the coffee table. A larger wooden box, also open, was observed at the side of the divan. This box contained a small pipe and a package of vegetation, again believed by the officers to be marijuana. After observing these items, Sergeant Hall called patrolman Allen Miller of the Fort Scott Police Department, who came to the apartment, photographed the several items, and took them into his possession as evidence.

The record before us clearly reveals that, when observed by the officers, both of the boxes were open and the contents were in plain view to anyone in the same room, and that the officers did not profess to be expert in the identification of drugs and merely observed what they believed to be marijuana. They did not smell, taste, or pick up any of the items prior to the time they were photographed and seized as evidence. The record is also clear that, at the time of responding to the fire call, the police did not know who was the occupant of the apartment and were not acquainted with the defendant, although prior to leaving her apartment that morning they did learn her name and that she was a student. It is also clear that the officers entered the apartment without a search warrant and without any idea that they would find any forbidden substance.

On the following Tuesday, the defendant was arrested and charged with possession of marijuana (K.S.A. 1976 Supp. 65-4127b). On July 18, 1977, the judge of the district court sustained the defendant's motion to suppress the evidence so assembled, stating in his order that he was doing so on the basis of *State v. Schur,* 217 Kan. 741, 538 P.2d 689.

In *Schur,* the supreme court affirmed the order of the district court sustaining the defendant's motion to suppress certain evidence as a result of a search of defendant's apartment by the police, the State there contending that the evidence should have been admitted under the "plain view—no search" doctrine. However, the facts as set forth in that opinion differ substantially from the facts in the case at bar. In *Schur,* the police officer went to the defendant's apartment in response to a complaint from a neighbor that the defendant's stereo was too loud. Without entering the defendant's apartment, the officer observed through a sliding glass door what appeared to him to be a marijuana cigarette. When the occupant opened the door, the officer smelled

an odor similar to that of burning marijuana. He then identified himself and asked if he might enter the apartment. His request to enter was refused but he nevertheless did enter, took a closer look at the cigarette, and noticed another cigarette on a table. In doing so, he observed what he believed to be other contraband, seized all of the items, and placed the defendant under arrest for possession of marijuana and amphetamines. The court noted that, in view of the officer's familiarity with the appearance and odor of marijuana, a magistrate acting with proper discretion could cause a search warrant to issue under those circumstances; but even if probable cause to obtain a search warrant existed, there was not sufficient justification for a warrantless search of the premises. It was stated:

"It has long been settled under the Fourth and Fourteenth Amendments to the United States Constitution that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable   .   .   .   subject only to a few specifically established and well-delineated exceptions.'   .   .   .   It has been further stated that these exceptions to the warrant requirement have been 'jealously and carefully drawn'   .   .   .   with the burden of proof being on those seeking to invoke the exception.   .   .   ." (217 Kan. at 743.)

It was noted that one of the exceptions is seizure of evidence in plain view, citing *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022. In *Schur,* our court also noted that, despite the observation of evidence in plain sight and the existence of probable cause, police officers are not justified in making a warrantless search and seizure of the evidence in the absence of what is generally referred to as "exigent circumstances." It was there argued that the facts of the case brought it within the "exigent circumstances" exception, which justified the officer's entrance into the apartment and the seizure of the contraband, for it was reasonable to conclude from defendant's conduct that the evidence would be destroyed if the police left to obtain a search warrant. It was the conclusion of the court that defendant's refusal to grant permission to the officer to enter the apartment, and his standing in the doorway, could not properly be considered by the officer as factors creating "exigent circumstances," those acts by themselves being merely an assertion of the defendant's right to privacy and to be secure against unreasonable search and seizure. The court observed that it was only after the officer asked for permission to enter the apartment and subsequently forced his way in that it became reasonably certain that

defendant would have destroyed the contraband if he had not been arrested. It was concluded that, under the circumstances of that case, the "plain view" doctrine did not justify the warrantless search, for in the absence of exigent circumstances, plain view may serve only as probable cause for the issuance of a search warrant.

Circumstances justifying a warrantless search and seizure of evidence of a crime which is in plain view, recognized in *State v. Schur,* supra, are set forth in *Coolidge v. New Hampshire,* supra. There it was stated in substance that for the plain view exception to apply, it must be shown (1) that the initial intrusion which afforded the authorities the plain view was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent. (403 U.S. at 464-473.) See also, *United States v. Clark,* 531 F.2d 928 (8th Cir. 1976).

As to whether an initial intrusion is lawful, *Coolidge* states:

"What the 'plain view' cases have in common is that the police officer in each of them had a *prior justification for an intrusion* in the course of which *he came inadvertently across a piece of evidence* incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, *or some other legitimate reason for being present unconnected with a search directed against the accused*—and permits the warrantless seizure . . . ." (403 U.S. at 466; emphasis added.)

Among the well-established "legitimate reasons" for a police officer to be present on privately occupied premises is in response to an emergency. See *Vale v. Louisiana,* 399 U.S. 30, 35, 26 L.Ed.2d 409, 90 S.Ct. 1969; *Wayne v. United States,* 318 F.2d 205 (D.C. Cir. 1963); *State v. Boyle,* 207 Kan. 833, 486 P.2d 849. In *Wayne,* the "emergency doctrine" was well described by then Circuit Judge Warren Burger:

" . . . [A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency . . . ." (318 F.2d at 212.)

In *Boyle,* the Kansas Supreme Court stated:

"Where 'exigent circumstances' . . . exist the business of policemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with judicial process . . . ." (207 Kan. at 839.)

See also, Mascolo, "The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment," 22 Buffalo L. Rev. 419 (1973).

Unlike *Schur* in which contraband was viewed prior to a valid entry, the facts in the case at bar fit squarely within the concerns of the emergency doctrine. The officers responded to a fire call. Upon arrival at the scene, they forcibly entered the apartment in order to save property and possibly to save lives. The initial intrusion was lawful.

The second *Coolidge* requirement is that the discovery of the evidence be inadvertent. Here, the officers' testimony was that the marijuana was seen in two open boxes in the living room. Although both boxes had lids, the uncontradicted testimony was that both were open when the officers first observed the contents. If the lids had been in place and the officers had removed them, and only then discovered the marijuana, it would not have been in plain view and the evidence would properly have been suppressed. There is nothing in the record to indicate the trial court disbelieved the officers' testimony that the marijuana was in plain view and, when they responded to the fire call, there was no reason to suspect that they would discover any contraband or evidence of a crime.

The third *Coolidge* element, that the incriminating nature of the evidence be immediately apparent, is also present in this case. The officers, although not expert in the field of drugs, were immediately aware that the observed substance probably was marijuana.

In this case, a valid intrusion, based on the exigency of the fire, had occurred before the marijuana was discovered in plain view. The discovery was inadvertent and the officers were immediately aware of the incriminating nature of their discovery. Nothing further was necessary to justify the seizure.

Among cases upholding warrantless seizures of contraband by officers after the contraband has been discovered in plain view by firemen or policemen on the scene in response to a fire, are *Steigler v. Anderson,* 496 F.2d 793 (3rd Cir. 1974), and *State v. Young,* 11 Or. App. 276, 501 P.2d 1001 (1972).

One further point should be noted. There was some evidence that, after the marijuana was discovered, the police proceeded to

conduct a general search of the apartment. If that is true, their doing so was wrong. However, the record does not reflect that any evidence resulted from such further search. As stated in *Coolidge:*

" . . . Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (403 U.S. at 466.)

The seizure of the evidence in this case was lawful and the trial court erred in sustaining the motion to suppress.

Reversed and remanded.