(947 P.2d 1030)
No. 75,149

STATE OF KANSAS, *Appellee*, v. DAVID LEE JONES, *Appellant*.

406

Opinion filed October 3, 1997.

*Carol Smasal*, student intern, *Jean K. Gilles Phillips*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., ELLIOTT, J., and DAVID W. KENNEDY, District Judge, assigned.

PIERRON, J.: David Lee Jones appeals his conviction for possession of cocaine. A detailed statement of the facts is necessary in order to evaluate issues he raises on appeal.

On March 25, 1995, shortly after noon, Officer Doug Orbin of the Shawnee police department was dispatched to an apartment complex on a "check the welfare of a subject" call. There he met with Anthony and Donna Flamez, who were concerned about their son Tony. They had made plans to have dinner with Tony on March 22, 1995, but he had not shown up, and they had not seen him since. They had called Tony's apartment several times and left messages on his answering machine, but he had never answered the phone or returned their calls. The Flamezes said this was unusual behavior for Tony. They also said Tony had recently become acquainted with someone of whom he seemed to be afraid.

Officer Orbin, two other police officers, the Flamezes, and an apartment employee went up to Tony's apartment. The apartment employee had the manager's permission to open Tony's door if the need arose. After knocking on the door, calling for Tony, and receiving no response, Orbin asked the employee to open the door with the manager's key.

Inside, a man and woman were lying on the couch under a blanket. Orbin entered the apartment and asked the man if he was Tony. The man indicated he was not, and the Flamezes, standing outside the door, confirmed the man was not their son. Orbin asked the couple if they knew where Tony was and if he was all right, but neither had any idea where Tony was or when he would return. (Tony was later found in Jones' apartment, where he had gone voluntarily.)

While conversing with the couple, Orbin noticed a glass tube with burnt residue on the end lying on the coffee table in front of the couch. Orbin recognized the item as a crack pipe and asked the man what it was. The man responded that it was used to smoke crack.

Orbin attempted to identify the couple during this time, but the man gave several false names which came back with no record after a records check. Another officer noticed the man's picture lying on top of the woman's purse. On the back of the picture was the man's real name, David Lee Jones. A records check revealed an outstanding warrant for Jones. Orbin placed Jones under arrest and asked where his clothes were so he could get dressed. Jones pointed to his clothes, including a pair of pants, which were lying on the floor about 10 feet away.

Orbin checked the pants pockets for safety purposes before handing them to Jones. Inside the pockets were pieces of plastic and a vial containing a white powder residue, which Orbin believed to be a controlled substance. Subsequent testing revealed cocaine present on both the crack pipe from the table and in the vial recovered from the pocket.

Orbin estimated he had spotted the crack pipe within 2 minutes of entering the apartment. Within the next 5 to 10 minutes Jones' name was determined from the photograph, and within 30 seconds thereafter, it was determined that Jones had a warrant out for his arrest.

Jones testified he had been acquainted with Tony for about a year and had stayed overnight at Tony's apartment on many occasions. He said Tony sometimes gave him the key so he could stay there, and he liked to do so because it was peaceful. Jones said he kept clothes at Tony's place along with a few personal items.

At a suppression hearing, Jones argued the Flamezes' concern did not justify the warrantless entry of Tony's apartment. The State countered by asserting that the emergency exception to the warrant requirement recognized in *Mincey v. Arizona*, 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978), and in *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976), was applicable. The trial court determined that Jones had standing to contest

the search, and after applying the test provided in *Mitchell*, the court agreed with the State that the emergency doctrine exception was satisfied. The court denied the motion to suppress and the case proceeded to trial.

A jury convicted Jones on the possession of cocaine charge but acquitted him of the possession of drug paraphernalia charge. He was sentenced to a nondeparture sentence of 34 months. Jones filed a timely notice of appeal on the issue of the legality of the entry.

Jones' first argument regards the admissibility of certain evidence at the suppression hearing and the State's burden of proof. The State bears the burden of proving the lawfulness of its warrantless entry and subsequent seizure of evidence within the premises. See *State v. Anderson*, 259 Kan. 16, Syl. ¶ 1, 910 P.2d 180 (1996). Jones argues the trial court relieved the State of its burden by allowing Officer Orbin to testify at the suppression hearing as to what the Flamezes had said to prompt Orbin to make the warrantless entry. He argues such testimony was inadmissible hearsay and the Flamezes should have had to testify personally in order for the court to determine whether they actually feared for their son's welfare and whether there was an actual emergency. Jones argues that unless Tony really was in danger, there was no legal justification for the warrantless entry.

Whether the Flamezes *honestly* feared for their son (and it appears they did) was not the issue. Whether Tony was *truly* in danger was also not the issue. The issue was whether there were sufficient facts to support a reasonable belief by Officer Orbin that an emergency existed which justified entry into the premises. While the Flamezes' testimony might have been helpful in this regard, it was not required. Officer Orbin was qualified to testify as to the information he acted upon, and it was for the trial court to judge his credibility.

As for Officer Orbin's testimony regarding statements made to him by the Flamezes, this evidence was admissible. Out-of-court statements made by third parties to police officers which are offered to the court merely to explain the officers' conduct in the course of their investigative duties are generally admissible because

they are not offered for the truth of the matter stated. It is only when such statements also directly incriminate the defendant that they are inadmissible, absent application of some hearsay exception. *State v. Johnson*, 253 Kan. 75, Syl. ¶ 7, 853 P.2d 34 (1993).

The trial court admitted the testimony merely as evidence of what led the officers to act, and not for the truth of the matters stated. This was not hearsay. None of the statements incriminated Jones. The testimony was properly admitted.

Jones also argues the evidence acquired by the police after entering the apartment should have been suppressed as fruit of the poisonous tree. Specifically, he argues the warrantless entry was not justified by any exception to the warrant requirement and was therefore illegal.

Appellate courts used a substantial competent evidence standard to review the factual underpinnings of a trial court's decision regarding the suppression of evidence, but the ultimate legal conclusion drawn from those facts is reviewed de novo with independent judgment. See *State v. Webber*, 260 Kan. 263, Syl. ¶ 3, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997). The facts and circumstances leading up to and including the initial entry are not in dispute. The issue raised by Jones may be resolved based on those undisputed facts.

The trial court ruled that Jones had standing to attack the warrantless entry because he was an overnight guest with permission to be on the premises. Substantial competent evidence supports the trial court's factual determinations in this regard, and the ultimate legal conclusion is supported by case law. See *Minnesota v. Olson*, 495 U.S. 91, 98-100, 109 L. Ed. 2d 85, 110 S. Ct 1684 (1990) (overnight guests have legitimate expectation of privacy in host's home and, thus, standing to attack legality of entry and search).

The State argues the warrantless entry was justified by the emergency exception to the warrant requirement. Jones argues the facts do not fall within that exception.

The emergency doctrine reflects a recognition that the police perform a community caretaking function which goes beyond fighting crime. See 3 La Fave, Search and Seizure § 6.6, pp. 389-90 (3d ed. 1996). Under this function, the community looks to the police

to render aid and assistance to protect lives and property on an emergency basis regardless of whether a crime is involved. Warrantless entries into and searches of private property pursuant to this exception are not prohibited by the Fourth Amendment to the United States Constitution or by Section 15 of the Kansas Constitution Bill of Rights.

The emergency exception to the warrant requirement has been recognized by the United States Supreme Court and by numerous state and federal courts. See *Mincey*, 437 U.S. at 392-93, and nn. 6, 7 (recognizing exception and noting numerous state and federal cases discussing the exception); see generally 3 La Fave, Search and Seizure § 6.6; 79 C.J.S., Searches and Seizures § 61. In *Mincey*, the Supreme Court stated:

"We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' *Wayne v. United States*, 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. [Citations omitted.]" 437 U.S. at 392-93.

Kansas has recognized the emergency exception, although our case law on the topic is not extensively developed. Primarily, two Kansas cases discuss or allude to the doctrine to justify a warrantless entry of a premises; *State v. Boyle*, 207 Kan. 833, 486 P.2d 849 (1971), and *State v. Jones*, 2 Kan. App. 2d 38, 573 P.2d 1134 (1978). Of these, only *Jones* relies solely on the emergency exception.

In *Boyle*, the police went to a house in response to a request by family members that the police remove dynamite being stored there by one of their siblings who, according to his younger sister, was "talking crazy." 207 Kan. at 837. The police observed the dynamite in the garage and arrested the defendant when he entered the garage. They then walked the defendant back through the ga-

rage door into the home to meet with other officers who were attempting to gain entry through the front door.

While proceeding to the front of the house through the living room, the arresting officer spotted some marijuana. The police secured a search warrant to look for more dynamite and evidence of drugs. Other drug-related items were discovered in executing the warrant. The defendant was charged with various offenses, including possession of marijuana and possession of an explosive with intent to commit a crime. The trial court granted the defendant's motion to suppress certain physical evidence, and the State appealed.

The Kansas Supreme Court held that the police had consent to enter the home to search for and remove the dynamite and that the marijuana observed in plain view was subject to seizure and was admissible evidence. Additionally, the court held that there was probable cause to believe a crime involving dynamite was being committed and the police had a reasonable perception of exigent circumstances. The exigency arose from the reports of the defendant's "talking crazy" coupled with his possession of dynamite in a residential area one block from an elementary school. 207 Kan. at 837-39.

The *Boyle* court stated that where such exigent circumstances exist,

"the business of policemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with judicial process. . . .

. . . .

"The police officers were lawfully on the premises here in question in response to a citizen's call for help, and while lawfully on the premises observed contraband or evidence of crime in the form of both dynamite and marijuana in open view.

"It has long been settled that objects falling in plain view of an officer who has a right to be in the position to have that view, are subject to seizure and may be introduced into evidence." 207 Kan. at 839-40.

Although some language in *Boyle* supports an emergency exception, *Boyle* is not a pure emergency doctrine case because there were two independent grounds on which to justify the warrantless

entry—consent and probable cause related to a crime coupled with exigent circumstances.

*State v. Jones*, 2 Kan. App. 2d 38, cited by the State, is the only pure emergency doctrine case involving a warrantless police entry into a premises. In *Jones*, police responded to a call from a resident of an apartment complex regarding a fire in another apartment. Through a window, the police observed a cloud of smoke inside. They entered the apartment and discovered the source of the smoke—a rubber-backed rug smoldering on top of a floor furnace. The officers began to look for occupants of the apartment and to clear the smoke. One officer saw a small open box on a coffee table. The box contained what appeared to be partially smoked marijuana cigarettes, a pipe, and plastic bottles containing marijuana seeds. Near the coffee table was another open box containing drug-related items. These items were photographed and then seized and taken into evidence.

The appellate court held that the entry was lawful under the emergency doctrine exception and the seizure of the evidence was justified under the plain view exception. The court distinguished the case from those where plain view has been used to *justify* a warrantless entry absent exigent circumstances, because the plain view observance only occurred *after* the legitimate emergency entry. 2 Kan. App. 2d at 42. In discussing the emergency exception, the court stated:

"Among the well-established 'legitimate reasons' for a police officer to be present on privately occupied premises is in response to an emergency. See *Vale v. Louisiana*, 399 U.S. 30, 35, 26 L.Ed.2d 409, 90 S.Ct. 1969; *Wayne v. United States*, 318 F.2d 205 (D.C. Cir. 1963); *State v. Boyle*, 207 Kan. 833, 486 P.2d 849. In *Wayne*, the 'emergency doctrine' was well described by then Circuit Judge Warren Burger:

" '. . . [A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency . . . .' (318 F.2d at 212.)" 2 Kan. App. 2d at 41.

The State also cites *State v. Smith*, 243 Kan. 715, 763 P.2d 632 (1988), and *State v. Miesbauer*, 232 Kan. 291, 654 P.2d 934 (1982). These cases are not emergency doctrine cases and do not directly

support the State's position. In both cases, the Kansas Supreme Court held the evidence seized as a result of the warrantless entries did not require suppression. The holdings turned on the fact that the entries and searches were not conducted by State, city, or county authorities acting within the scope of their duties, or by private individuals acting under the direction of such authorities. *Smith*, 243 Kan. at 718, 722, 724; *Miesbauer*, 232 Kan. 291, 293-94. Searches by private persons acting independently do not implicate the proscriptions of the Fourth Amendment. *Smith*, 243 Kan. 715, Syl. ¶¶ 2, 7. In the present case, the warrantless entry was effected by the police acting within the scope of their duties.

While *Jones* recognized the emergency doctrine as an exception to the warrant requirement, it did not delineate the boundaries of the exception, or provide guidance on how to analyze fact situations under it. In *People v. Mitchell*, 39 N.Y.2d 173, the New York Court of Appeals provided a three-prong test for analyzing the applicability of the emergency doctrine exception. The test was set forth with the express purpose of providing the police and the courts guidance in evaluating circumstances to determine whether the exception applies in a given case. The test includes the following three parts:

"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

"(2) The search must not be primarily motivated by intent to arrest and seize evidence.

"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." 39 N.Y.2d at 177-78.

Several states, including Alaska, Arizona, Illinois, Nebraska, and North Dakota, follow this test, and it is often cited with approval by legal commentators. See 3 La Fave § 6.6(a), pp. 392-93 and n. 17 (quoting the test and noting states that follow it); *Gallmeyer v. State*, 640 P.2d 837 (Alaska App. 1982); *People v. Krueger*, 208 Ill. App. 3d 897, 567 N.E.2d 717 (1991).

The hardest question in this case is whether, under the first prong, the police had reasonable grounds to believe there was an immediate need for their assistance to address an emergency.

It is important to keep in mind that reasonable grounds under the emergency doctrine differs from the probable cause required under the more familiar crime-related exigent circumstances exception. The State readily admitted to the trial court that it did not have probable cause sufficient to support a warrant to search for evidence of a crime within Tony's apartment. The State asserts that the emergency exception nevertheless applies.

Jones asserts the police should have been required to obtain a warrant to enter the premises. He misconceives the essence of the emergency exception.

As explained in *State v. Fisher*, 141 Ariz. 227, 240-41, 686 P.2d 750, *cert. denied* 469 U.S. 1066 (1984), the exigent circumstances exception is distinct from the emergency exception, and the two are often confused:

> "The exigent circumstances exception is triggered when the police, with probable cause but no warrant, enter a dwelling in the reasonable belief that the delay necessary to obtain a warrant threatens the destruction of evidence, [citations omitted], or when they have a reasonable belief that a crime is in progress or has just been committed in a dwelling and the delay attendant to obtaining a warrant endangers the safety or life of a person therein. [Citations omitted.] . . . .

> "Conversely, the emergency aid doctrine is triggered when the police enter a dwelling in the reasonable, good-faith belief that there is someone within in need of immediate aid or assistance. In cases in which this doctrine applies there is no probable cause which would justify issuance of a search warrant, . . . , and the police are not entering to arrest, search, or gather evidence."

Although the possibility of criminal activity might account for the feared danger in a given case, the primary motive of the police will not be to search for evidence of a crime, but rather to render assistance. See, *e.g., People v. Mitchell*, 39 N.Y.2d at 178 (hotel maid disappeared in the course of her duties, and her street clothes and partially eaten lunch were discovered on the floor on which she had last been seen; the police arriving on the scene the same day could not know immediately whether she had "been stricken with some illness, suffered an accident or possibly fallen victim to a crime").

Like the prosecution in the present case, the investigating officer in *Fisher* conceded he lacked probable cause to obtain a warrant to enter and search the Fishers' apartment. The owner of the con-

dominium had been found murdered in an alley and had last been seen alive en route to collect rent from the Fishers. The Fishers had not been seen since that time and had failed to respond to messages. Their neighbors were concerned because the Fishers were usually around. Although the officer's belief that the Fishers might have similarly come to harm did not rise to the level of probable cause sufficient to secure a warrant, it justified entry into the Fishers' apartment based on the emergency doctrine.

In short, when a police entry is a genuine check on the welfare of a person, many concerns which justify the use of the exclusionary rule in search and seizure cases are not applicable.

The circumstances in the instant case are not as extreme as in *Fisher* and many other cases involving the emergency doctrine, but they certainly pass muster. The Flamezes had not seen or heard from their son in 3 days, he had inexplicably missed a dinner appointment with them, and he had failed to answer his phone or return their messages.

Jones argues the police made their entry essentially on the basis that "a grown man . . . had not called his parents in three days" and had missed a dinner engagement with them. He argues this was not enough to give rise to a reasonable belief that harm had befallen the young man. However, there was more to it than that. According to the Flamezes' representations to the officer, the missed dinner appointment and the failure to return their calls was uncharacteristic of Tony. When added to their awareness that he had made a recent acquaintance of whom he was afraid, the Flamezes' worry was justifiable and the police reaction was well justified.

Although the facts in each emergency doctrine case are unique, cases in other states involving warrantless entries to search for missing persons based on facts roughly comparable to those present in this case have qualified for the emergency exception. See, *e.g.*, *People v. Wharton*, 53 Cal.3d 522, 280 Cal.Rptr 631, 809 P.2d 290 (1991) (police entry lawful where occupant of premises had not been seen by neighbors for 2 weeks, mail had accumulated in mailbox, and occupant's aunt had called expressing concern for her niece); *Geimer v. State*, 591 N.E.2d 1016 (Ind. 1992) (emergency

entry permitted where son of missing person indicated that it was uncharacteristic for his father to leave town for long without notifying anyone and missing person's other son, who lived with father, gave to various individuals inconsistent explanations of his father's whereabouts); *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S. 2d 246, 347 N.E. 2d 607 (1976) (hotel maid disappeared in course of duties at hotel, and her street clothes were found on floor where she had last been seen); and *Com. v. Silo*, 509 Pa. 406, 502 A.2d 173 (1985) (victim who was last heard arguing with defendant had failed to report for work, could not be reached by phone, and had not been seen in the 24 hours subsequent to the argument).

If there had been additional facts to strengthen the picture of concern, the question would be easier. But police are often forced to make judgment calls under circumstances where it is better to err on the side of safety. The fact that Tony was not discovered in need of help in his apartment is of no relevance. See 3 La Fave, Search and Seizure § 6.6(a), p. 392. The officers' actions are judged on the basis of the facts facing them at the moment of their decision and are evaluated objectively with due consideration for the stress of the moment and the pressure to make important decisions based on often ambiguous facts. It would indeed be tragic if Tony had lain injured or dying, or had been under restraint in the apartment, and the police had refused to take seriously the concerns of a mother and father who knew their son's habits and disposition.

The second prong, regarding the motivation behind the warrantless entry, was easily satisfied here. The police arrived at the scene and entered the apartment with the sole motivation of determining what had happened to Tony and to see if he was in need of aid. There is no evidence in the record that they expected to find either Jones or evidence of illegal drugs inside the apartment. The entry was not primarily motivated by the intent to arrest and/or seize evidence.

The third prong asks whether there was some reasonable basis to associate the place searched with the emergency. Tony's residence was a reasonable place to associate with that emergency and a legitimate place to begin the search for him.

While this three-prong analysis will be of assistance in some cases, in most instances, common sense will be the touchstone. Police entry to check on the welfare of a person may not be used as a stratagem for circumventing the Fourth Amendment to the United States Constitution. But if police appear truly to have acted for the purpose of checking on a person's welfare, and their actions appear to be reasonable under the circumstances, further analysis is unnecessary.

Affirmed.