(776 P.2d 477)

No. 63,092

STATE OF KANSAS, *Appellant,* v. GERARD S. WINDES, *Appellee.*

Opinion filed June 23, 1989.

*Thomas J. Bath*, assistant district attorney, *Dennis W. Moore*, district attorney, and *Robert T. Stephan*, attorney general, for the appellant.

*Kathleen A. Zarda* and *John Ivan*, of Shawnee Mission, for the appellee.

Before BRISCOE, P.J., ELLIOTT and GERNON, JJ.

BRISCOE, J.: This is an interlocutory appeal by the State pursuant to K.S.A. 22-3603 from an order sustaining defendant Gerard Windes' motion to suppress evidence.

Defendant was charged with possession of cocaine. The parties stipulated to the following facts:

"1. On April 26, 1988 Federal Express security manager John Matlock opened a suspicious package which had been placed in the Orlando, Florida Federal Express office for shipment to Overland Park, Kansas. Matlock opened the package as he believed it to be suspicious in that he thought it could possibly contain contraband substances. Matlock used his company's 'drug profile' criterion in determining that the package should be opened for inspection. Matlock, nor any of his staff, are commissioned law enforcement officers. Matlock, nor any of his staff, had any contact with law enforcement officers prior to the package being opened.

"2. After the package was opened, Matlock discovered that it contained a quantity of white powder, which he believed to be cocaine. Matlock then contacted Agent Kerry Farney of the Florida State Attorney's Metro Bureau Investigation, who at that time became involved in the investigation. The white powder was field tested positive for the presence of cocaine. Agent Farney contacted the Overland Park Police Department and made arrangements to ship the package to Overland Park so that the recipient of the suspect package could be identified.

"3. Lt. Ray Vallejo of the Overland Park Police Department became involved in the investigation and was on hand when the Federal Express package was received at KCI Airport on April 29, 1988. Vallejo received the package from Dan Rush of the local Federal Express office. Vallejo returned with a package to the Overland Park Police station where the package was again opened and examined by the police. The package was then retaped and sent to the Federal Express office in Overland Park. An Overland Park female officer, Amy Auld, posed as a federal express clerk and gave the package to the defendant when he came to pick it up at approximately 8:45 a.m. on April 28, 1988. The defendant picked the package up, was allowed to leave the Federal Express station and drove away in his vehicle. A few minutes later the suspect, Gerard Windes, was stopped in his vehicle by Overland Park police officers who seized the package and opened it without benefit of a search warrant. Found inside the package was a quantity of cocaine."

The court concluded the search of the package after defendant was stopped in Overland Park was unreasonable because it was conducted without a warrant and did not fall under any of the recognized exceptions to the warrant requirement—consent,

search incident to arrest, exigent circumstances, "hot pursuit," or "stop and frisk." It is apparent from the journal entry that the court focused on the search of the package following its delivery in Kansas, and not on the initial opening of the package in Florida by the Federal Express employee.

On appeal, the State contends the opening of the package after its delivery in Kansas was permissible because the officers knew its contents and were executing a "controlled delivery" to defendant. The State contends the initial opening of the package by Federal Express was a private search, not within the scope of the Fourth Amendment, and the actions of the Florida law enforcement officers were reasonable because they did not expand beyond the prior private search, relying on *United States v. Jacobsen*, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984).

A review of the facts shows the Kansas officers were executing a "controlled delivery" to defendant. In *Illinois v. Andreas*, 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319 (1983), the Supreme Court addressed the search and seizure of a container known to contain contraband and delivered to a suspect in a "controlled delivery." The Court held that no protected privacy interest remains in contraband in a container once governmental officials have lawfully opened the container and identified its contents as illegal. The simple act of resealing the container does not operate to revive or restore the lawfully invaded privacy rights. As a result, the subsequent reopening of the container is not a "search" within the meaning of the Fourth Amendment. The Court held that, absent a substantial likelihood the contents have been changed, there is no legitimate expectation of privacy in the contents of a container previously opened under lawful authority.

Following *Andreas*, two issues are presented in this case: (1) Was the initial search by Florida law enforcement officers legal; and (2) was there a substantial likelihood the contents of the package were changed after delivery to defendant?

### A. Initial search of package.

The State contends the original search by Federal Express employees was a private search outside the scope of the Fourth Amendment and the subsequent actions of the Florida agents were legal under *Jacobsen*, 466 U.S. 109. Defendant contends the Fourth Amendment required the Florida law enforcement

officers to obtain a search warrant before conducting a field test of the contents of the package and, from that point on, all evidence obtained against defendant, including the later seizure of the package from his vehicle, should be suppressed. Defendant does not argue that the initial search conducted by a Federal Express employee was illegal.

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The wording and scope of section 15 of the Bill of Rights of the Kansas Constitution has been held to be identical, for all practical purposes, to the Fourth Amendment. *State v. Bishop*, 240 Kan. 647, 656, 732 P.2d 765 (1987). The Fourth Amendment proscribes only governmental action; it is wholly inapplicable to a search or seizure by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official. *Jacobsen*, 466 U.S. at 113; *State v. Miesbauer*, 232 Kan. 291, 293, 654 P.2d 934 (1982).

In this case, a Federal Express employee opened the package because, based on his company's "drug profile" criteria, he was suspicious that it contained contraband. According to the stipulated facts, neither the employee nor any other staff was a commissioned law enforcement officer, nor was there any contact with law enforcement officers prior to the package being opened. Therefore, the actions of the employee, whether reasonable or not, did not violate the Fourth Amendment because of their private character. *Jacobsen*, 466 U.S. at 115. See *State v. Boswell*, 219 Kan. 788, 549 P.2d 919 (1976).

At issue, however, is the subsequent action of law enforcement officials. Upon opening the package, the Federal Express employee discovered a quantity of white powder which he believed to be cocaine. He then notified Florida agents, whose field test of the white powder was "positive" for cocaine. It is not clear from the stipulated facts whether the agents reopened the package to get to the cocaine or whether the Federal Express employee left the package open with the cocaine in plain view. If the package was reopened and the cocaine removed by the agents, there is an issue as to whether the action was legal. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy. Warrantless

searches are presumptively unreasonable. Although law enforcement officials may lawfully seize a package to prevent loss or destruction of suspected contraband, they must obtain a warrant before examining the contents of the package. *Jacobsen*, 466 U.S. at 114.

Here, the action by law enforcement officers was preceded by a private search. Under these circumstances, the reasonableness of the official conduct must be tested by the degree to which it exceeded the private search which preceded it. *Jacobsen*, 466 U.S. at 115. If the law enforcement officers do not exceed the scope of the prior private search, they do not infringe upon any privacy interest that has not already been frustrated as a result of the private conduct; therefore, the governmental action is not a "search" within the meaning of the Fourth Amendment. *Jacobsen*, 466 U.S. at 117-18.

*Jacobsen* concerned facts very similar to the present case. Employees of a private freight carrier opened a damaged box wrapped in brown paper and found a 10-inch tube surrounded by crumpled newspaper. They cut open the tube and discovered plastic bags containing about six and one-half ounces of white powder. The employees contacted the Drug Enforcement Administration. Before the DEA agents arrived, the employees replaced the plastic bags in the tube and put the tube back in the box. The first DEA agent to arrive found the box wrapped in brown paper, but with a hole punched in the side and the top open, on a desk. The agent observed that one end of the tube had been slit open. He removed the plastic bags from the tube and saw the white powder. He opened the bags, removed some of the powder, and conducted a field test which identified the powder as cocaine. Other agents arrived and conducted a second field test, obtained a search warrant to search the place to which the package was addressed, executed the warrant, and arrested respondents. Respondents' motion to suppress on the ground the warrant was the product of an illegal search was denied.

The United States Supreme Court held the activity of the government did not infringe upon any Fourth Amendment interests. First, the Court held the Fourth Amendment did not apply to the initial private search by the carrier's employees and, second, the Court analyzed the law enforcement activity to determine whether it exceeded the scope of the private search.

According to the Court, the law enforcement activity involved two steps: (1) removal of the tube from the box, the plastic bags from the tube, and a trace of powder from a bag; and (2) the chemical test of the powder. The Court concluded the removal of the tube from the box, the plastic bags from the tube, and the powder from a bag did not expand the private search. Respondents had no privacy interest in the contents of the package since it remained unsealed. The agents were able to learn nothing more than had been previously learned in the private search. Since the government actions infringed upon no legitimate expectation of privacy, it was not a "search" within the meaning of the Fourth Amendment. *Jacobsen,* 466 U.S. at 119-20. Although the agents' assertion of dominion over the box did constitute a "seizure," it was reasonable for the agents to temporarily seize the box since it could no longer support any expectation of privacy. *Jacobsen,* 466 U.S. at 120-21.

The Court next examined the field testing of the cocaine. The Court held the testing of a substance to determine whether it is cocaine is not a "search" since it does not compromise any legitimate privacy interest. *Jacobsen,* 466 U.S. at 122-24. The test was, however, a "seizure" because it affected respondents' possessory interest in the powder. The Court concluded this seizure was reasonable because the law enforcement interest was substantial and the seizure had only a minimal impact on the respondents' possessory interests. In conclusion, the Court held the government did not infringe upon any protected privacy interest that had not already been frustrated as the result of private conduct and, to the extent a protected possessory interest was infringed upon, such infringement was minimal and constitutionally reasonable. *Jacobsen,* 466 U.S. at 126.

The facts of the present case are not as detailed as those in *Jacobsen.* According to the stipulated facts, once the package was opened and the powder was observed, the employee contacted the Florida law enforcement officers, who then became involved in the investigation. The powder field tested positive for cocaine. There is no indication as to whether powder was observed in the opened package in plain view or if the law enforcement officers reopened the package and then observed the cocaine. If the officers observed the cocaine in plain view, reexamination of the cocaine would be justified. *Walter v. United States,* 447 U.S.

649, 657, 65 L. Ed. 2d 410, 100 S. Ct. 2395 (1980). If the officers reopened the box to observe the cocaine, however, their actions could constitute a search and must be reviewed under the analysis of *Jacobsen*.

Applying *Jacobsen*, the action of the officers did not infringe upon any privacy right of defendant which had not already been frustrated by the private conduct of the Federal Express employee. The facts are not clear but, even if it is assumed the employee repackaged the cocaine, the officers could open the package without expanding the scope of the preceding private search. Once the package was opened by the employee, defendant's expectation of privacy was frustrated and the officers' action in duplicating the prior private search was not a "search" for purposes of the Fourth Amendment. The exercise of dominion over the box by the agent was a "seizure," but such a temporary seizure was reasonable. Any infringement of the defendant's possessory interest in the box or its contents was minimal and constitutionally reasonable.

B. Search of package following delivery to defendant.

The Florida law enforcement officers contacted the Overland Park police and made arrangements to ship the package to Overland Park so the recipient of the package could be identified. The facts do not indicate that the results of the cocaine test were communicated to the Overland Park police but, given their subsequent activity, this must have occurred.

After picking up the package at the airport, the Overland Park police took the package to the police station, reopened it, and examined its contents. This was not a "search" under the Fourth Amendment. The opening of the package and testing of its contents were lawful and, once the contents were determined to be illegal drugs, the container no longer could support any expectation of privacy. Therefore, the reopening of the package at the police station was not a "search."

Was there a substantial likelihood the contents of the package were changed following delivery to defendant? According to the stipulation of facts, defendant picked up the package at the Federal Express office and drove off, and "a few minutes later" he was stopped and the package was seized and opened. Considering the nature of the container—a sealed package—and the short break in surveillance, it is substantially unlikely that de-

fendant removed the contents of the package or placed anything in it. Therefore, the reopening of the package following its delivery to defendant did not intrude on any legitimate expectation of privacy and did not violate the Fourth Amendment. *Andreas*, 463 U.S. at 773.

The appeal is sustained and the case is remanded for further proceedings.