(163 P.3d 350)
No. 95,007

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee,* v. M<small>ICHAEL</small> D<small>EAN</small> G<small>ERAGHTY</small>, *Appellant.*

Opinion filed July 20, 2007.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before MALONE, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Michael Geraghty was charged with possession of methamphetamine and felony possession of drug paraphernalia after police entered Geraghty's residence with his daughter in order to investigate a potential methamphetamine lab and later obtained and executed a search warrant on the residence. Geraghty moved to suppress the evidence seized from his residence as a result of the search warrant, arguing that the search warrant was based solely on information gained by the unlawful police entry into his residence. The trial court denied Geraghty's motion to suppress on the following grounds: (1) that the police had consent from Geraghty's daughter to initially enter Geraghty's residence, and (2) that exigent circumstances warranted the search. Geraghty's case proceeded to a jury trial, and he was convicted of both charges.

On appeal, Geraghty challenges the trial court's denial of his motion to suppress, arguing that neither consent, the emergency doctrine, nor exigent circumstances justified police entry into his residence. It appears that Geraghty is correct. Nevertheless, the trial court's decision can be upheld for a different reason. Even if the information obtained during the unlawful police entry into Geraghty's residence is excised from the affidavit for the search

warrant, the facts contained in the affidavit establish probable cause for the issuance of a search warrant for Geraghty's residence. As a result, the trial court did not err in denying Geraghty's motion to suppress. Accordingly, we affirm the trial court's denial of the motion to suppress.

Finally, Geraghty contends that the trial court erred in ordering him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees without considering his financial circumstances. We agree. Nevertheless, it is unclear from the record whether Geraghty has already reimbursed BIDS for attorney fees and, consequently, has rendered this issue moot. As a result, we remand to the trial court to clarify whether Geraghty has paid BIDS attorney fees. If Geraghty has paid such fees, the trial court is directed to dismiss this matter as moot. On the other hand, if Geraghty has not fully paid this amount, the trial court is directed to resentence Geraghty in compliance with K.S.A. 2006 Supp. 22-4513 regarding the assessment of BIDS attorney fees. Accordingly, we remand with directions on this issue.

*Facts*

On August 14, 2004, police received a call from Geraghty's landlord that a man was seen carrying a shotgun and a rifle into Geraghty's apartment. Officers arrived at Geraghty's apartment around noon and discovered the door wide open and smelled a strong odor of burnt marijuana. The officers announced themselves and asked if anyone was in the apartment. Geraghty answered the officers and came out of the back bedroom. One of the officers asked Geraghty about the marijuana smell, but Geraghty indicated that he did not know from where the smell was coming. One of the officers went to the back bedroom where he found a bag of marijuana. Geraghty was placed under arrest for possession of marijuana and taken to jail.

Later that afternoon, Layla Bryan, Geraghty's daughter, received a message from Geraghty's landlord that she needed to remove guns from Geraghty's apartment. Chris Bryan, Layla's husband, went with her to Geraghty's apartment. Because Layla did not have a key to Geraghty's apartment, an employee of the apartment com-

plex had to let her inside the apartment. In the bedroom of Geraghty's apartment, Chris discovered a small glass vial that contained a small rock. In a closet in the apartment, Layla found a red cooler and a purple gym bag. Layla discovered two large red jars containing a liquid substance in a trash bag inside the cooler. Layla also discovered a glass flask inside the gym bag.

After finding these items, Layla called the police. Officer Matthew Gural arrived at Geraghty's residence around 6:45 p.m. and met Layla and Chris. Layla told Gural that she thought she had discovered a methamphetamine lab inside of Geraghty's apartment. Gural asked Layla to go with him inside the apartment to show him what she had discovered. Layla showed Gural the cooler and gym bag in the front room of the apartment. Inside the cooler, Gural saw multiple glass jars wrapped tightly in plastic wrap and containing a yellowish, milky-colored liquid. Gural removed one of the jars from the cooler to look at it closer. Inside the gym bag, Gural saw a glass container wrapped tightly in plastic wrap and containing the same type of liquid as the jars in the cooler. A coffee filter was stuffed into the glass container. In addition, Gural smelled ammonia and saw camping fuel and a plastic bag containing a scale near the gym bag and cooler.

After looking at these items, Gural left the apartment with Layla and Chris. Upon leaving the apartment, Layla and Chris explained that they had discovered a small glass vial containing a small yellowish-brown rock that appeared to be a narcotic on the headboard of Geraghty's bed. Gural contacted his supervisor about his observations, and a search warrant for Geraghty's apartment was prepared. The search warrant was executed that night, and various items relating to the manufacture of methamphetamine were seized from Geraghty's apartment.

Geraghty was charged with possession of methamphetamine in violation of K.S.A. 65-4107(d)(3) and K.S.A. 65-4160(a) and felony possession of drug paraphernalia in violation of K.S.A. 65-4152(a)(3). Before trial, Geraghty moved to suppress the evidence obtained during the search of his residence. Geraghty argued that Gural's warrantless search of his residence was unlawful and that any evidence gained during this search must be suppressed. Ger-

aghty further argued that because the search warrant was based solely on the information gained through Gural's invalid search, the evidence gained from the search warrant must be suppressed as fruit of the poisonous tree. The trial court denied Geraghty's motion to suppress, determining that both consent and exigent circumstances justified Gural's entry into the apartment. The case proceeded to a jury trial, and Geraghty was convicted of both charges. The trial court placed Geraghty on probation for 12 months with an underlying prison sentence of 24 months.

## I. Motion to Suppress

On appeal, Geraghty contends that the trial court erred in denying his motion to suppress. Because the material facts to the trial court's decision on Geraghty's motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. 281 Kan. at 324.

## A. Gural's Initial Search of the Apartment

In addressing Geraghty's argument on this issue, we must first determine whether Gural's warrantless entry into Geraghty's apartment was lawful. We bear in mind that "unreasonable searches are constitutionally prohibited and 'unless a search falls within one of a few exceptions, a warrantless search is per se unreasonable.' [Citation omitted.]" *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003). "The 'exclusionary' rule prohibits the admissions of the 'fruits' of illegally seized evidence, *i.e.*, any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom." *State v. Canaan*, 265 Kan. 835, Syl. ¶ 3, 964 P.2d 681 (1998).

The recognized exceptions to the search warrant requirement under the Fourth Amendment to the United States Constitution include consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances;

the emergency doctrine; inventory searches; plain view; plain feel; and administrative searches of closely regulated businesses. *Mendez*, 275 Kan. at 421.

The trial court determined that both the consent exception and the exigent circumstances exception justified Gural's warrantless entry into Geraghty's apartment. We will address each of these exceptions to the search warrant requirement separately.

### 1. Consent

Geraghty argues that Gural had no reason to believe that Layla or the landlord had the proper authority to consent to a search of Geraghty's apartment. On the other hand, in responding to Geraghty's argument, the State cites *State v. Windes*, 13 Kan. App. 2d 577, 580, 776 P.2d 477 (1989), for the proposition that the police here had the authority to retrace Layla's steps in her private search.

*Windes* involved law enforcement officers' search of a suspicious package that had been searched previously by a Federal Express employee. The employee had called law enforcement after he discovered a white powder, which he believed to be cocaine, in the package. This court determined that the employee's actions of opening the package, without having any contact with law enforcement, did not violate the Fourth Amendment due to their private character. 13 Kan. App. 2d at 580. Moreover, in analyzing the later actions of Florida law enforcement, this court set forth the rule from *United States v. Jacobsen*, 466 U.S. 109, 117-18, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984), that when a search by law enforcement officers does not exceed the scope of a prior private search, the officers do not infringe upon any privacy interest that has not already been frustrated by the private conduct, and their actions do not constitute a "search" within the meaning of the Fourth Amendment. 13 Kan. App. 2d at 581. This court held that once the package was opened by the employee, the defendant's expectation of privacy was frustrated and the officers' action in duplicating the prior private search was not a "search" under the Fourth Amendment. 13 Kan. App. 2d at 583.

Similarly, in *Jacobsen*, law enforcement officers searched a package that had already been opened and searched by employees of

a private freight carrier. The United States Supreme Court held that officers' actions in removing the contents of the package, removing a bag from a tube in the package, and removing white powder from the bag did not expand the private search. The Court stated that the respondents had no privacy interest in the contents of the package since it remained unsealed and that the agents learned no more than what had been revealed in the private search. The Court held that the officers' actions did not constitute a "search" within the meaning of the Fourth Amendment. 466 U.S. at 117-20.

Both *Windes* and *Jacobsen* are distinguishable from the instant case because those cases involved the search of a package that had been turned over to a third party for delivery. This case involves the search of Geraghty's home. Moreover, unlike the defendants in *Windes* and *Jacobsen* who turned over control of their property to a third-party carrier, Geraghty never turned over control of his apartment to a third person. The State fails to cite any case where the rule from *Jacobsen* and *Windes* has been extended to the search of a residence. Our Supreme Court has recognized that a person's privacy interest in his or her home is entitled to unique sensitivity: " 'The Fourth Amendment protects a citizen's reasonable expectations of privacy and one's reasonable expectation of privacy in the home is entitled to unique sensitivity.' [Citations omitted.]" *State v. Reno*, 260 Kan. 117, 128, 918 P.2d 1235 (1996). Because this case involves the search of a residence, it does not appear that Layla's prior search of Geraghty's apartment would justify Gural's warrantless entry and search.

Furthermore, as Geraghty points out, the evidence fails to establish that Layla had actual or apparent authority to consent to a search of his residence. In *Porting*, 281 Kan. at 324, our Supreme Court recognized that the prohibition against warrantless searches of a person's home under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights does not apply where voluntary consent has been obtained, either from the person whose property is searched or from a third party who has common authority over the premises. Our Supreme Court quoted *United States v. Matlock*, 415 U.S. 164, 171 n.7, 39

L. Ed. 2d 242, 94 S. Ct. 988 (1974), where third-party consent was explained as follows:

" 'The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that *the others have assumed the risk that one of their number might permit the common area to be searched.*' " *Porting*, 281 Kan. at 325.

Because Layla was the person who allowed Gural into Geraghty's apartment, the focus is on whether she had the authority to consent to the search. As Geraghty points out, Layla did not live in Geraghty's apartment, nor did she have a key to it. In fact, Layla had been called to Geraghty's apartment by the landlord for the limited purpose of removing guns from the apartment. Gural knew this information before he searched Geraghty's apartment. Because the consent was not given by someone "generally having joint access or control" of the property "for most purposes," it cannot be used to justify Gural's warrantless entry and search of Geraghty's apartment.

### 2. *Exigent Circumstances*

In determining that exigent circumstances justified Gural's warrantless entry into Geraghty's apartment, the trial judge stated:

"This case is going to turn primarily on the question of whether there was any emergency or exigent circumstances which required at least an initial examination to see if there was a meth lab inside. I reject the notion that the officer could simply on the word of the daughter [have] evacuated the area, brought EMS and fire cruisers, which is typically done for meth lab. That is great inconvenience and expense for the public as well when it was simple matter where deputy open his eye and look where the daughter said she saw were chemicals. The intrusion here is quite minimal, quite minimal. Officer Gural did the appropriate thing to back off when he saw what he saw; ordered persons out; and then secured the residence until a search warrant be obtained."

The trial court stated that Gural would have been derelict in not going inside the apartment. The trial court noted that this case was very similar to a situation involving a leaky gas valve or a dead body where immediate attention was required.

The trial court's decision is confusing because it seems to combine both the exigent circumstances exception and the emergency doctrine exception to the search warrant requirement. Nevertheless, these two exceptions are based on different circumstances:

" 'The exigent circumstances exception is triggered when the police, with probable cause but no warrant, enter a dwelling in the reasonable belief that the delay necessary to obtain a warrant threatens the destruction of evidence, [citations omitted], or when they have a reasonable belief that a crime is in progress or has just been committed in a dwelling and the delay attendant to obtaining a warrant endangers the safety or life of a person therein. [Citations omitted.] . . . .

" 'Conversely, the emergency aid doctrine is triggered when the police enter a dwelling in the reasonable, good-faith belief that there is someone within in need of immediate aid or assistance. In cases in which this doctrine applies there is no probable cause which would justify issuance of a search warrant, . . . , and the police are not entering to arrest, search, or gather evidence.' " *State v. Jones*, 24 Kan. App. 2d 405, 414, 947 P.2d 1030 (1997) (quoting *State v. Fisher*, 141 Ariz. 227, 240-41, 686 P.2d 750, *cert. denied* 469 U.S. 1066 [1984]).

The trial court in this case never went through the proper analysis for either the exigent circumstances exception or the emergency doctrine exception. Because each involves a different analysis, we will discuss the two exceptions separately.

Under the exigent circumstances exception, we note that the State does not argue that Gural's entry into Geraghty's residence was based on the threat of the destruction of evidence. The evidence establishes that Gural knew that Geraghty had been arrested earlier in the day and was in jail. Therefore, there was no threat that Geraghty was in the apartment and could destroy evidence or that he would have escaped if not swiftly apprehended. Moreover, Layla and her husband had called the police about the suspected methamphetamine lab, and they were outside of the apartment when Gural arrived. Further, Layla told Gural that an employee of the apartment complex had let her and her husband into Geraghty's apartment after the landlord had called her and asked her to remove guns from the apartment. This information indicated that Layla and her husband had been the only ones inside the apartment. Therefore, Gural could not reasonably believe that evidence would be destroyed while a search warrant was obtained.

Moreover, Gural's actions establish that he did not enter Geraghty's apartment on the reasonable belief that the delay in obtaining a warrant would endanger the safety or life of a person in the dwelling. As discussed previously, no one was inside Geraghty's apartment when Gural arrived. Gural did not attempt to warn the neighbors or get them out of the apartment building. Gural did not call a drug task force or any other emergency department that had experience in handling methamphetamine labs to the scene. Instead, Gural took both Layla and her husband back inside the apartment where the methamphetamine lab was located. Gural's actions were contrary to those of an officer who believes that the delay to obtain a search warrant would endanger the safety or life of a person in the dwelling. Therefore, the probable cause with exigent circumstances exception does not apply here.

### 3. Emergency Doctrine

Our Supreme Court in *State v. Drennan*, 278 Kan. 704, 719-20, 101 P.3d 1218 (2004), set forth the rationale of the emergency doctrine exception that was explained by the United States Supreme Court in *Mincey v. Arizona*, 437 U.S. 385, 392, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978), as follows:

" 'We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." [Citation omitted].' "

In *Mendez*, 275 Kan. at 425, our Supreme Court recognized that in order to establish application of the emergency doctrine, three requirements must be met: (1) the police must have reasonable grounds to believe that an emergency is at hand and that their assistance is needed immediately for the protection of life or property; (2) the search must not be primarily motivated by the intent to arrest and seize evidence; and (3) there must be a reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. The State has the burden of establishing application of the emergency doctrine. *State v. Horn*,

278 Kan. 24, 32, 91 P.3d 517 (2004). The reasonableness of the officer's belief of the existence of an emergency and an immediate need for assistance is measured by an objective standard. 278 Kan. at 32-33.

The State correctly points out that the second prong of the emergency doctrine is no longer required under *Brigham City v. Stuart*, 547 U.S. 398, 164 L. Ed. 2d 650, 126 S. Ct. 1943 (2006). Nevertheless, it is apparent that the State has not met the first prong of the emergency doctrine in this case. Before entering the apartment, Gural knew only that Layla suspected that her dad was making methamphetamine and that she had seen several jars inside the apartment. Gural was provided with no information that the methamphetamine lab was active. Moreover, Gural was aware that no one was inside the apartment and that Geraghty had not been there for hours.

The facts of this case are unlike those in other cases where courts have found the emergency doctrine exception to apply. For example, in *State v. Jones*, 2 Kan. App. 2d 38, 573 P.2d 1134 (1978), an officer responding to an apartment fire saw a cloud of smoke inside the apartment. The officer entered the apartment and removed a smoldering rug. Officers reentered the apartment to search for occupants and to clear the apartment of smoke. Upon reentry, they found marijuana and drug paraphernalia. Determining that the facts of the case fit squarely within the emergency doctrine, this court stated: "The officers responded to a fire call. Upon arrival at the scene, they forcibly entered the apartment in order to save property and possibly to save lives. The initial intrusion was lawful." 2 Kan. App. 2d at 42.

In *Brigham City*, officers responded at 3 a.m. to complaints about a loud party. As the officers approached the house, they could hear a loud and tumultuous altercation that seemed to be coming from the back of the house. After looking in the front window and seeing nothing, the officers walked to the back of the house. The officers saw a juvenile with fists clenched being held back by several adults inside the kitchen. As the officers watched, the juvenile broke free and struck an adult in the face, sending the adult to a sink spitting blood. One of the officers opened the door

and yelled "police." After nobody responded, the officer entered the kitchen. Determining that the officers were justified in entering the home without a warrant, the United States Supreme Court held that the officers had an objectively reasonable basis for believing that the injured adult might need help and that there was an imminent threat of violence. 547 U.S. at 406-07.

This case is different from both *Jones* and *Brigham City* because there is no objectively reasonable basis in this case to conclude that immediate officer entry was necessary in order to save lives or property. The facts in this case do not support an objective belief that someone was in danger or that there was an imminent threat of harm to life or property. Under the first prong, the circumstances known to Gural at the time of entry did not create a reasonable belief that an emergency was at hand and that police assistance was needed immediately for the protection of life or property. Therefore, the emergency doctrine exception is inapplicable to this case.

## B. *Search Warrant*

Nevertheless, our analysis does not end here. If the trial court reached the right result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *State v. Nash*, 281 Kan. 600, 602, 133 P.3d 836 (2006). The State argues that even without the information concerning what Gural discovered inside the apartment in the search warrant affidavit, there was ample probable cause for a search warrant to be obtained.

The State's argument suggests that Geraghty's apartment would have been searched and the evidence seized regardless of whether Gural initially entered the apartment without a warrant. The State's argument relates to the inevitable discovery exception to the exclusionary rule. "Evidence obtained unlawfully in violation of a defendant's constitutional rights is admissible under the inevitable discovery exception to the exclusionary rule where the prosecution can prove by a preponderance of the evidence that the unlawfully obtained evidence would have ultimately or inevitably been dis-

covered by lawful means." *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶ 4, 784 P.2d 381 (1989).

When an application and affidavit for search warrant contains information both lawfully and unlawfully obtained, the question becomes whether the lawfully obtained information by itself supports probable cause that would have justified issuance of the search warrant by the magistrate. *State v. Weas*, 26 Kan. App. 2d 598, 603, 992 P.2d 221 (1999), *rev. denied* 268 Kan. 895 (2000).

Importantly, in his motion to suppress, Geraghty never challenged the legality of the officers' earlier entry into his apartment when they smelled the strong odor of burnt marijuana. At the suppression hearing, Geraghty made clear that the search to which he was objecting was Gural's search of the apartment. In the absence of any objection to the earlier search, it would be improper to consider the legality of such search. See *Mize v. State*, 199 Kan. 666, 666-67, 433 P.2d 397 (1967) (failure to object to admission of illegally obtained evidence waives the issue); see also *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006) (Issues not raised before the trial court cannot be raised on appeal.). Therefore, the facts pertaining to the earlier entry contained in the affidavit for search warrant may properly be considered in determining whether a search warrant would have been issued.

The affidavit for search warrant in this case contained the following facts:

"1. On August 14, 2004, at 1220 hours, officers were dispatched to 130 East Madison #7, Garnder, Johnson County, Kansas, in reference to a subject carrying a rifle into the residence. At that address officers observed that the front door to the apartment was standing open. Officers knocked and announced, while the officers were standing at the door, they smelled an odor that in their training and experience, noted as the odor of burnt marijuana. Officers observed a male, late[r] identified as Michael D. Geraghty, walk out of the bedroom door. Officers investigated the odor, and observed a quantity of marijuana in the bedroom. Geraghty was placed into custody at that time and transported to New Century ADC for lodging.

"2. On August 14, 2004, officers were again dispatched to 130 East Madison #7, Gardner, Johnson County, Kansas, on a recovered property report. When the officer arrived on the scene, a female, later identified as Layla K. Bryan, approached the officer and said, 'I think my dad is cooking meth in here (#7).' The officer entered the residence and observed a can of camping fuel, a scale,

several clear plastic and glass containers wrapped in cellophane, butane grill lighter, and a flask with a coffee filter in it. Once the officer saw the flask with the filter in it, the officer moved everyone out of the residence, for safety reasons, as the officer recognized the components of a meth lab. Bryan continued to say that her husband discovered a 'rock-type' of narcotic in Geraghty's bedroom.

"3. Officers inquired as to how the daughter discovered these items. Bryan advised that before she went over to #7, the apartment complex manager called her and requested that she remove all firearms from her father's residence, due to the neighbor's complaints. When she went into the residence, that is when she discovered the suspected drug paraphernalia and called the police."

Excising the information relating to Gural's warrantless search of the residence, we are still left with the following facts: officers had been called to Geraghty's residence earlier in the day after he was seen carrying a gun into his apartment; the officers smelled an odor of burnt marijuana coming from Geraghty's residence and later found marijuana in Geraghty's bedroom; Geraghty was arrested for possession of marijuana; Geraghty's landlord later asked Layla to come to the apartment to remove guns; after entering the apartment, Layla called the police because she suspected that Geraghty was making methamphetamine; Layla told Gural that she thought her father was making methamphetamine in the apartment; and Layla told Gural that her husband had found a "rock-type" narcotic in Geraghty's bedroom.

Even without the information relating to Gural's warrantless entry, there is ample information in the affidavit for the search warrant to support probable cause to issue a search warrant. Illegal drugs had been found in Geraghty's residence earlier in the day. Layla supplied information that her father appeared to be making methamphetamine inside the apartment and that her husband had discovered what appeared to be a rock-type narcotic in the apartment.

## Informants' Reliability

In *State v. Hicks*, 282 Kan. 599, 614, 147 P.3d 1076, our Supreme Court held that the concerns over the "veracity" and the "basis of knowledge" of people providing hearsay information in an affidavit for search warrant "falls by the wayside if 'an unques-

tionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him [or her] to criminal liability.' [Citations omitted.]" See *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999) ("[T]he most favored of the tips are those which are in fact not really anonymous at all. These tips occur when the person giving the tip gives the police his or her name and address or identifies himself or herself in such a way that he or she can be held accountable for the tip."); *State v. Musick*, 30 Kan. App. 2d 76, 78, 38 P.3d 144, *rev. denied* 273 Kan. 1039 (2002) (informants who supplied police with their names, addresses, and enough information to make it clear they had firsthand knowledge of defendant's activities considered reliable). Here, Layla identified herself and remained at the apartment to speak with Gural and to show him what she had discovered. Layla had firsthand knowledge of what she reported because she had been inside the apartment. Layla was not implicated in any criminal activity and had voluntarily called the police to report the suspected crime. If the information turned out to be false, the police had enough information to hold Layla accountable for the false report. Under these circumstances, the information provided by Layla was reliable.

We conclude beyond a reasonable doubt that the magistrate would have issued a search warrant for Geraghty's residence based upon the information possessed by the police without Gural's warrantless entry. Because the evidence that was seized in this case would have been ultimately discovered in a lawful entry, Geraghty's motion to suppress was properly denied.

## II. BIDS Attorney Fees

Finally, Geraghty argues that the trial court erred in ordering him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees when it failed to consider his ability to pay, the financial burden that payment would impose, and the validity of the fees. Geraghty's argument on appeal concerns the reimbursement of attorney fees under K.S.A. 2006 Supp. 22-4513 and does not extend to the application fee under K.S.A. 2006 Supp. 22-4529.

In the recent case of *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006), our Supreme Court held: "A sentencing court

assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose."

Here, the trial court never considered on the record at the time of assessing BIDS attorney fees the financial resources of Geraghty and the nature of the burden that payment of the fees would impose. Under *Robinson,* it appears that this case should be remanded for resentencing with directions for the trial court to comply with K.S.A. 2006 Supp. 22-4513 regarding the assessment of BIDS attorney fees.

Nevertheless, the State makes an interesting argument that because Geraghty has been terminated from probation, this issue is moot. An appeal will not be dismissed for mootness unless it is clearly and convincingly shown that the actual controversy has ended and the only judgment that could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the case are concerned. *In re M.R.,* 272 Kan. 1335, 1339, 38 P.3d 694 (2002).

" 'The general rule is that an appellate court does not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citation omitted.]" *Smith v. Martens,* 279 Kan. 242, 244, 106 P.3d 28 (2005).

One of the conditions of Geraghty's probation was for Geraghty to pay BIDS—the public defender fund—$200. Geraghty was discharged from probation in July 2005. Nevertheless, the record is unclear as to whether Geraghty actually reimbursed BIDS the assessed $200 attorney fee. As a result, we remand to the trial court for clarification on whether Geraghty has paid the BIDS attorney fee of $200. If Geraghty has paid that amount, the trial court is directed to dismiss this matter as moot. On the other hand, if Geraghty has not fully paid this amount, the trial court is directed to

resentence Geraghty in compliance with K.S.A. 2006 Supp. 22-4513 regarding the assessment of BIDS attorney fees.

Affirmed in part and remanded with directions.