(173 P.3d 1156)
No. 97,251

STATE OF KANSAS, *Appellee*, v. PHILLIP JEFFERY, *Appellant*.

Opinion filed January 11, 2008.

*Steven C. Staker*, of North Central Regional Public Defender's Office, of Junction City, for appellant.

*Tony Cruz*, assistant county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before CAPLINGER, P.J., ELLIOTT and LEBEN, JJ.

LEBEN, J.: On New Year's Eve in 2005, Junction City police officers were dispatched to Phillip Jeffery's apartment. The officers had been told that the resident there had cut his wrists and attempted to hang himself in a tree. When officers knocked on the door, Jeffery initially wouldn't open it, which left officers rightly concerned about his welfare if they did nothing to help him. Jeffery did open the door with the security chain attached at least once while the officers continued to knock and spoke with a neighbor. When Jeffery finally opened the door without the security chain attached, officers rushed him, ordered him to lie on the floor, and handcuffed him.

This is the point at which the plot thickens for the purposes of this appeal. Officers then searched the full apartment in walk-through fashion; they said that they were looking either for any person who might be injured or any weapons that Jeffery might use to hurt himself or others. But they had already taken Jeffery into their custody, and an officer testified at trial that they planned to take Jeffery from his home for a mental-health evaluation. The officers had no information suggesting that anyone else was in the home, and there was no immediate danger that the handcuffed Jeffery would use anything found elsewhere in the apartment to hurt himself. The Fourth Amendment to the United States Constitution protects us from a warrantless search of our home except in limited circumstances. As we will soon discuss, none of the exceptions are applicable here because there was no reason to go elsewhere in the apartment to address the situation that the officers confronted. We thus conclude that the marijuana and drug paraphernalia found during the search of Jeffery's apartment cannot be used against him; the convictions obtained based on that evidence must be set aside.

We begin our discussion with the Fourth Amendment, which prohibits unreasonable searches of a home:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Case law interpreting the Fourth Amendment tells us that a search without a warrant is unreasonable unless it falls within one of several limited, well-defined exceptions to the warrant requirement. *State v. Thompson*, 284 Kan. 763, Syl. ¶ 11, 166 P.3d 1015 (2007). Section 15 of the Kansas Constitution's Bill of Rights provides the same protection. *Thompson*, 284 Kan. 763, Syl. ¶ 15. If officers are in a place they have a right to be within the home, they may seize any evidence in plain view. *State v. Horn*, 278 Kan. 24, 36-37, 91 P.3d 517 (2004). But if officers obtain evidence through an unconstitutional entry into the home, then the evidence may not be used in court against the resident. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Reno*, 260 Kan. 117, 129, 918 P.2d 1235 (1996).

The exception for a search incident to an arrest does not apply here—Jeffery was not arrested before the search took place. Nor can the exception for protective sweeps to protect officer safety apply because this exception also applies only when an arrest has occurred. *Maryland v. Buie*, 494 U.S. 325, 108 L. Ed. 2d 276, 110 S. Ct. 1093 (1990); *State v. Johnson*, 253 Kan. 356, Syl. ¶ 5, 856 P.2d 134 (1993). Jeffery was not suspected of committing any crime when officers ordered him to lie on the floor and handcuffed him. He therefore was not arrested, which is the act of taking a person into custody to answer for the commission of some crime. K.S.A. 22-2202(4). The officers' concern was for Jeffery's safety based upon the reports of his suicidal conduct.

The State contends that the exception known as the emergency-aid doctrine applies. Under that doctrine, entry without a warrant is allowed if two requirements are met. First, the police must have reasonable grounds to believe that an emergency is at hand and that their assistance is needed immediately for the protection of life or property. Second, there must be a reasonable basis, essentially probable cause, to associate the emergency with the area or place to be searched. *State v. Geraghty*, 38 Kan. App. 2d 114, 123-24, 163 P.3d 350 (2007).

This exception cannot justify a police search of Jeffery's entire apartment after he had been handcuffed. Jeffery was handcuffed just inside the front door; officers then had to go down a hallway

to enter the living room, and they had to go to the other side of the apartment to enter the bedroom. Contraband was found in these other rooms, but there simply was no *immediate* need for assistance that called for officers to search the rest of the apartment after subduing Jeffery in the entryway. See *State v. Pseudae*, 154 N.H. 196, 201-02, 908 A.2d 809 (2006) (holding emergency-aid doctrine did not justify the search of a suicidal man's bedroom and removal of the rifle found there after the man had been subdued outside the home). Officers did not attempt to remove all the items that Jeffery might be able to use to harm himself, nor could they. Any search for items that Jeffery might use to hurt himself would be wide-ranging—anything from a kitchen knife to a belt to a bedsheet to a bathtub with a drain plug could be used to commit suicide. Of equal significance, though, the officers did not plan to leave Jeffery at the apartment where he could do any immediate harm to himself, anyway. They planned instead to take him for a mental-health evaluation, which is specifically authorized by Kansas law. See K.S.A. 59-2953(a). There was no emergency need to clear Jeffery's apartment of items that he might use to harm himself when he returned from the mental-health evaluation.

Nor does a concern that others might have been injured in Jeffery's residence justify a search of the apartment here: the officers did not possess knowledge of any facts that either indicated the presence of anyone else in the apartment or that Jeffery had tried to harm anyone else.

First, the evidence known to the officers suggested that only one other person, Jeffrey's girlfriend, had been in the apartment that day, but that she was no longer there. At the hearing held on Jeffery's motion to suppress evidence, the parties stipulated that a police dispatcher had contacted Jeffery's girlfriend to ask her to bring a key to the apartment. This presumably occurred before Jeffery was subdued, since a key was not needed after that point; the girlfriend presumably was not at the apartment, or police would simply have asked her to open the door. In addition, one officer told another officer—after Jeffery was handcuffed, but before the rest of the apartment was searched—that Jeffery had apparently been talking with his girlfriend on the phone when officers entered

the apartment. And even though Jeffery was conversing with officers, there is no evidence that they even asked him whether anyone else was in the apartment before they searched it.

Second, the evidence known to the officers suggested only that Jeffrey was trying to harm himself, not anyone else. Jeffery's neighbor had told police that Jeffery, during an argument with his girlfriend, had threatened suicide if she left him. The neighbor said that Jeffery's girlfriend had told him that Jeffery was attempting to commit suicide, and the neighbor later observed Jeffery go to a tree while carrying a white sheet, apparently for use in trying to hang himself. When this evidence is taken together, it provides no basis approximating proximate cause to search the rest of the apartment for someone else who might have been injured and in need of assistance.

The cases cited by the State do not suggest a different result here. Those cases were generally ones in which police were asked to check on the welfare of someone who had not been heard from, and the officers were allowed under the emergency-aid exception to go far enough into a residence to try to locate the person. *E.g.*, *Horn*; *State v. Jones*, 24 Kan. App. 2d 405, 947 P.2d 1030 (1997). In another case, *State v. Drennan*, 278 Kan. 704, 719-22, 101 P.3d 1218 (2004), officers were allowed to investigate the welfare of a home's resident who was missing after a call to 911 about domestic violence. But no case cited by the State suggests that officers may search a residence after the person about whose welfare they were concerned has been located and subdued where there is no indication that anyone else is present in the residence or has been injured there.

We have an advantage that the trial court did not in evaluating the evidence. Not only do we have transcripts that can be studied, but the trial testimony also provided a more complete account than was presented at the earlier hearing on Jeffery's motion to suppress evidence. Officers testified at trial about their plan to take Jeffery for a mental-health evaluation, but they did not mention this at the earlier hearing. Jeffery's attorney renewed his objection to the evidence at trial, however, and we must take all of the evidence into account.

Of course, we also have an advantage that the officers called to Jeffery's apartment that day did not have. We have the ability to take the time we need to review the law and to consider how it must be applied to these facts. Even well-intentioned officers may not search a home without a warrant unless the search is clearly authorized under one of the limited exceptions to the search requirement.

The district court erred in denying Jeffery's motion to suppress the physical evidence obtained in the search of his apartment. The judgment of the district court is therefore reversed, and the case is remanded with directions to set aside Jeffery's convictions.