NOT DESIGNATED FOR PUBLICATION

No. 112,610

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHELLE L. CANFIELD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL RIOS KINGFISHER, judge. Opinion filed November 13, 2015. Reversed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin* and *Kyle Edelman*, assistant district attorneys, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: The police found and seized illegal drugs after entering Michelle L. Canfield's home without a search warrant. Canfield moved to suppress the evidence obtained in the search. She claimed the warrantless entry into her home was illegal. The State argued that there was probable cause to enter the house to arrest Canfield on an outstanding arrest warrant and, in any event, the entry was proper because there existed an emergency regarding the welfare of Canfield's children who were in the home. The district court concluded that the officers did not have reasonable grounds to believe Canfield was in the home at the time and, therefore, had no authority to enter the home to

1

execute the arrest warrant. But, the court found, the police were authorized to enter Canfield's home to conduct a "welfare check" of her children. Thus, the court refused to suppress the evidence obtained in the search.

There followed a trial based on stipulated facts in which the court convicted Canfield of possession of methamphetamine. This appeal followed. On appeal, we are persuaded by Canfield's arguments and conclude that the district court should have suppressed the evidence obtained in the warrantless search. Accordingly, we reverse Canfield's conviction.

*Facts*

The events began at about 8 o'clock on a Wednesday morning when police officers responded to a call from an individual who claimed he was the father of Canfield's children. The caller expressed concern about the safety of the children based on his belief that Canfield was using narcotics. Dispatch also notified one of the officers of an outstanding warrant for Canfield's arrest.

Officer Michael Cruse arrived at Canfield's home where he met Officer Aaron Bulmer. Officer Cruse did not have any specific information about Canfield being home, and there were no cars near the residence suggesting that Canfield might be at home.

Officer Cruse pounded on the front door for at least 5 minutes. Eventually Terrence Jackson answered the door. Officer Cruse asked Jackson whether Canfield was home. Jackson told Officer Cruse that he was not sure but would check. Jackson closed the door. He returned about 5 minutes later and told Officer Cruse that Canfield was not home. Officer Cruse warned Jackson that if he was lying about Canfield not being there he could be prosecuted for obstructing the process of executing the warrant. Jackson responded that he did not live there and was not sure whether Canfield was present.

2

As he spoke to Jackson, Officer Cruse was able to look beyond Jackson and see inside the home. The interior of the home appeared to be clean. There was no contraband in plain view. He observed two children, between the ages of 6 and 8, standing motionless in a hallway facing the doorway of another room. The children were clean and appeared to be unharmed. Because the children did not try to engage the officers, Officer Cruse thought their demeanor was suspicious.

At that time, Officer Bulmer arrested Jackson and handcuffed him while Officer Cruse entered the home. According to Officer Cruse, he believed there was a "strong possibility" that Canfield was inside the home, but he would have entered the home in any event to check on the welfare of the children.

Upon entering the house, Officer Cruse walked down the hallway toward the children and, upon reaching a doorway, observed Canfield sitting in the room on a bed. He arrested Canfield on the outstanding warrant and conducted a search of her person incident to the arrest. In that search, he found the drugs that were the basis for Canfield's conviction.

Canfield moved the district court to suppress the drug evidence. The district court denied the motion, finding that while Officer Cruse did not have authority to enter Canfield's home to determine whether she was present, he was authorized to enter her home to conduct a "welfare check" of the children. This appeal followed Canfield's subsequent conviction based on stipulated facts.

*Review Standards*

Normally, in reviewing the district court's decision on a suppression motion, we review the district court's factual findings for supporting substantial competent evidence; and we consider de novo the legal conclusion drawn from those facts. In doing so we do

3

not reweigh the evidence or the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014); *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014); see *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014). But when, as here, the facts are not in dispute, whether to suppress the evidence is strictly a question of law. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

*Lack of Probable Cause*

The United States Supreme Court has recognized that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

In *State v. Thomas*, 280 Kan. 526, 531, 124 P.3d 48 (2005), the Kansas Supreme Court interpreted *Payton* as requiring probable cause to believe the subject of the arrest warrant resided in the home and was present in the home. See *State v. Poulton*, 37 Kan. App. 2d 299, 305-06, 152 P.3d 678 (2007), *aff'd in part and rev'd in part* 286 Kan. 1, 179 P.3d 1145 (2008).

In this context, probable cause existed when the facts and circumstances within the knowledge of the officers, and about which the officers had reasonably trustworthy information, were sufficient to warrant a person of reasonable caution to believe that Canfield was in the house. While the facts and circumstances regarding Canfield's presence need not be established beyond a reasonable doubt, they must create more than a mere suspicion that she was in the house. See *State v. Fitzgerald*, 286 Kan. 1124, 1128, 192 P.3d 171 (2008), *overruled on other grounds by State v. Sanchez-Loredo*, 294 Kan. 50, 272 P.3d 34 (2012).

There is no dispute that Canfield resided at the home. The issue is whether the officers had probable cause to believe she was home that Wednesday morning. Dispatch had provided no information on whether Canfield was at home that day. The officers had no information about Canfield's employment status. But they were aware that there were no cars parked in the vicinity of the house. The fact that the children were home did not establish that Canfield also was there. Jackson was at home with the children, and the officers never asked if he was babysitting for them. The actions of Jackson and the children did no more than create a hunch that Canfield might be there.

The cases cited by the State all deal with the reasonable basis standard as opposed to the more stringent Kansas standard of probable cause. See *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir. 1999); *Payton v. City of Florence, Ala.*, 413 Fed. Appx. 126 (11th Cir. 2011) (unpublished opinion). In *Valdez*, the FBI agents had information from an affidavit that the subject they sought was unemployed and likely to be home when the agents arrived. Of course, the officers had no such information in our present case.

Considering the totality of the facts and circumstances confronting the officers, the officers had a hunch but not probable cause to believe that Canfield was at home that morning. The district court did not err in so concluding.

*Emergency Exception*

The State argues that entry into the house was warranted under the emergency exception to the exclusionary rule as it was applied by Kansas courts at the time of the search.

In 1997 in *State v. Jones*, 24 Kan. App. 2d 405, 413, 947 P.2d 1030 (1997), *overruled by Neighbors*, 299 Kan. 234, our court adopted from the New York Court of

Appeals a three-part test for application of the emergency doctrine. In doing so, the court stated:

> "The emergency doctrine reflects a recognition that the police perform a community caretaking function which goes beyond fighting crime. [Citation omitted.] Under this function, the community looks to the police to render aid and assistance to protect lives and property on an emergency basis regardless of whether a crime is involved. Warrantless entries into and searches of private property pursuant to this exception are not prohibited by the Fourth Amendment to the United States Constitution or by Section 15 of the Kansas Constitution Bill of Rights." *Jones*, 24 Kan. App. 2d at 409-10.

Following the United State Supreme Court's decision in *Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006), our court eliminated the element in *Jones* dealing with the officer's intent in entering the property without a warrant. *State v. Geraghty*, 38 Kan. App. 2d 114, 123-24, 163 P.3d 350, *rev. denied* 285 Kan. 1175 (2007), *overruled by Neighbors*, 299 Kan. 234. This left the following two elements to be proven to establish the emergency doctrine exception:

> (1) "[T]he police must have reasonable grounds to believe that an emergency is at hand and that their assistance is needed immediately for the protection of life or property"; and

> (2) "[T]here must be a reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Geraghty*, 38 Kan. App. 2d at 123.

The test was revised further in 2014 in *Neighbors*, 299 Kan. at 247-49, 251-54.

The search of Canfield's house took place in 2013. The State admits that Officer Cruse's search was not justified as an emergency under the current *Neighbors* standard. But the State argues that the search complied with the *Geraghty* standards in effect at the

6

time of the search, so the exclusionary rule does not apply. See *State v. Karson*, 44 Kan. App. 2d 306, 314-15, 235 P.3d 1260 (2010), *aff'd* 297 Kan. 634, 304 P.3d 317 (2013).

The circumstances surrounding the police's entry into Canfield's home do not support the first element of the *Geraghty* test. Officer Cruse testified that he was sent to Canfield's home to check on the welfare of her children because of a call to the dispatcher "from somebody stating that it was the father of the children" who reported that he "was afraid that Miss Canfield was using narcotics, placing the children at risk." There was no statement made to the dispatcher that Canfield was at home ingesting drugs at that moment in the presence of her children. The dispatcher's report in and of itself did not cause Officer Cruse to believe (and would not cause any reasonably prudent person to believe) that there was an emergency that created an immediate need for the officer to enter Canfield's residence to protect life or property. Further, by his actions Officer Cruse did not display any concern for the welfare of the children.

When Jackson answered the door, Officer Cruse asked him about Canfield, not the welfare of the children. "I asked him if Miss Canfield was there, and if I could speak to her." After Jackson closed the door, Officer Cruse remained outside waiting for at least another 5 minutes. (In earlier testimony he had estimated that he waited outside for about 15 minutes.) During that time, Officer Cruse made no effort to determine the condition of the children. The length of time after Jackson closed the door gave Officer Cruse the concern that "something was being retrieved that could harm me and the additional officer that was there or if somebody was going out the back door." He did not express any concern about what was happening to the children during this period.

When Jackson eventually reopened the door, Officer Cruse warned Jackson about obstructing his efforts to execute the arrest warrant on Canfield. He said nothing to Jackson about harboring children in a dangerous environment. But he was able to see behind Jackson the two children standing in the hallway. The children appeared to be

7

clean, and there was no contraband in plain view. The home appeared to be clean and well taken care of. There was no indication the children were in immediate danger.

Officer Cruse did not speak to the children. He did not ask Jackson about the children. He did not inquire who the children were, where their parents were, who was looking after them, or whether there had been any drugs consumed in their presence. The only suspicion he had was that if the children were there, Canfield also may be there. At that point Officer Cruse entered the residence, not for the purpose of addressing the needs of the children but to arrest their mother. He walked right past the children and into the room where Canfield sat on the bed.

There is no testimony that either officer did anything whatsoever to look after the well-being of the children during the entire time they were at Canfield's home. The generalized concern expressed in the call to the police dispatcher was not borne out by any observations by the police officers when they arrived at the Canfield home. We find no evidence in the record which would lead a prudent and reasonable officer to see the need to enter Canfield's home to protect the children. See *Jones*, 24 Kan. App. 2d at 416. Thus, we conclude the district court erred in finding that Officer Cruse was justified in entering Canfield's home to conduct a welfare check of the children.

With that we need not address the second element of the test for a warrantless entry to perform a welfare check. The evidence obtained in the illegal search should have been suppressed, and the conviction based upon that evidence must be reversed.

Reversed.